IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **YACOUB OULD SIDYA,**<br>　　　　**Plaintiff,**<br><br>v.<br><br>**SIDI MOHAMED KMACHE,**<br><u>Serve</u>: **7101 Bronner Circle, Apt. 8**<br>　　　　**Louisville, KY 40218**<br>　　　　**Defendant.** | **Case No.**  3:24-cv-238-CHB<br><br>**Judge** |

**COMPLAINT WITH JURY DEMAND**

COMES NOW Plaintiff Yacoub Ould Sidya ("Mr. Sidya"), by and through undersigned counsel, and for his Complaint with Jury Demand against Defendant Sidi Mohamed Kmache ("Mr. Kmache") states as follows:

**NATURE OF THE ACTION**

1.　This is an action for defamation and intentional infliction of emotional distress arising from a false and defamatory social media post published by Mr. Kmache about Mr. Sidya on or about March 17, 2024.

**PARTIES, JURISDICTION & VENUE**

2.　Plaintiff Yacoub Ould Sidya is a reputable businessman from Mauritania. Mr. Sidya went to college at Northern Kentucky University but returned to Mauritania after graduation.

3.　Mr. Sidya is not a citizen of the Commonwealth of Kentucky for the purposes of this diversity action. Pursuant to 28 U.S.C. § 1332(a)(2), Mr. Sidya is a citizen of Mauritania, a foreign state. Mr. Sidya is lawfully admitted for permanent residence in the United States.

1

However, Mr. Sidya is not domiciled in Kentucky.

4. Defendant Sidi Mohamed Kmache resides in, and is a citizen of, the Commonwealth of Kentucky. Mr. Kmache operates a business registered with the Kentucky Secretary of State known as "KMACHE EXPRESS LLC." Mr. Kmache may be served by delivering a copy of the Summons and Complaint to him at the following address: 7101 Bronner Circle, Apartment 8, Louisville, Kentucky 40218.

5. Mr. Kmache purports to be a social media "influencer" from Mauritania. Mr. Kmache has over 200,000 followers on Facebook. His account is "verified" by Facebook.

6. This Court has subject matter jurisdiction over the claims asserted in this Complaint pursuant to 28 U.S.C. § 1332(a)(2) because the parties are completely diverse and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

7. This Court has personal jurisdiction over Mr. Kmache because he resides in, and is a citizen of, the Commonwealth of Kentucky.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District at the address set forth above.

**FACTUAL BACKGROUND**

9. On or about March 17, 2024, Defendant published a post on Facebook (the "Post") using his personal Facebook account.

10. The Post was originally made in the Arabic language. Correctly translated to English, the Post reads: "Three National Police cars surrounded the home of businessman Yacoub Ould Sidiya (sic), the owner of several companies, including an insurance company, and the owner of a plane transporting gold. Police personnel entered the house to search it." A copy of the Post is attached to this Complaint as **Exhibit 1**. The Post remains available online.

11. For the convenience of the Court, a screenshot of the Post, translated to English by Facebook, is printed below:



12. The Post received widespread attention in Mauritania and in other places. It received at least 1,700 reactions on Facebook, as well as 235 comments and 50 shares.

13. The following factual assertions in the Post are utterly false and defamatory:

- the statement of fact that "three National Police cars surrounded the home of businessman Yacoub Ould Sidiya (sic)"; and

- the statement of fact that "police personnel entered [Mr. Sidya's] house to search it."

14. Those statements of fact are false because at no time did any "National Police cars" surround Mr. Sidya's home and at no time did any "police personnel" enter Mr. Sidya's home to "search it." Nothing remotely close ever happened.

15. These statements of fact are defamatory *per se* because, on their face, the statements

3

impute criminal conduct to Mr. Sidya and conduct that harms him in his occupation.

16. The Post's claim that Mr. Sidya's house was being raided and searched by the National Police was so shocking to its Mauritanian readership that, within hours after it was published, Mr. Sidya's house and phone were flooded with concerned visitors and callers.

17. Mr. Sidya's sister was so dismayed by the Post that she immediately got into her car and drove to Mr. Sidya's house to check on him. On her way to Mr. Sidya's home, she was hit by a car and suffered severe bodily injury as a result.

18. Mr. Sidya's brother also narrowly escaped bodily injury.

19. Mr. Sidya's son has even been targeted by bullies at school because his father, Mr. Sidya, is now a "drug dealer."

20. Mr. Kmache knows that the Post is false, but he published it anyway. Mr. Kmache lacked any factual basis for his Post.

21. Upon information and belief, Mr. Kmache perpetuates an illegal scheme to blackmail Mauritanians using Facebook. Mr. Kmache manufactures defamatory fiction, publishes it to Facebook, and then offers to remove his lies in exchange for a ransom payment from the victims.

22. The Post was one such false and defamatory post. Mr. Kmache sought a ransom payment from Mr. Sidya through an intermediary in exchange for removal of the fictitious post.

23. The individual serving as the intermediary, Sidi Hassan ("Hassan"), called Mr. Sidya shortly after the Post was published.

24. On that call, Hassan told Mr. Sidya that Mr. Kmache would remove the Post if Mr. Sidya agreed to make a payment to Mr. Kmache using an online payment platform called Bankily.

25. On that call, Hassan told Mr. Sidya that he knows of other people who have sent

Mr. Kmache money via Bankily.

26. Upon information and belief, Mr. Kmache has targeted other individuals in addition to Mr. Sidya in furtherance of this scheme.

27. Mr. Sidya has suffered severe and debilitating emotional distress as a result of Defendant's conduct. Mr. Sidya has suffered depression, anxiety, and post-traumatic stress because of Mr. Kmache's Post.

## CAUSES OF ACTION
### Count 1 – Defamation

28. The preceding paragraphs are hereby incorporated by reference as if fully realleged in this paragraph.

29. The Post is demonstrably false. At no time did the National Police or any law enforcement officer surround Mr. Sidya's home or search his home. Nothing close ever happened.

30. The Post is "of and concerning" Mr. Sidya because it states his name, "Yacoub Ould Sidya," and it is specifically about Mr. Sidya's home.

31. The Post contains statements of fact that are not "opinions" for purposes of this action. The Post's statements can be objectively proven false. The Post imputes and implies specific charges of conduct against Mr. Sidya, including that his home was being searched by the National Police. Whether or not the National Police surrounded Mr. Sidya's home and conducted a search constitutes statements of fact capable of being proven true or false in a court of law.

32. Defendant intended to convey his accusations about Mr. Sidya as statements of fact. Mr. Sidya did not publish his false statements about Mr. Sidya as parody or opinion.

33. The Post is capable of a defamatory meaning because, when read and viewed by a reasonable reader in context, the specific charges of conduct tend to, in no particular order, subject

Mr. Sidya to hatred, ridicule, and contempt; diminish Mr. Sidya's standing in the community; denigrate Mr. Sidya's fitness for his occupation; and impute criminal conduct to Mr. Sidya.

34. The Post is defamatory *per se* because it is defamatory on its face without any reference to outside material. The Post falsely denigrates and injures Mr. Sidya in his trade and profession as a businessman by alleging that the police were raiding his home. Reasonable readers would read the Post to facially convey statements imputing criminal conduct. The accusation that National Police or any law enforcement official was searching a businessman's home imputes and implies criminal conduct on the part of the businessman.

35. The Post is unprivileged. No common law privilege applies in this action. In any event, Mr. Kmache made his Post in bad faith, with common law malice manifesting in spite and ill will towards Mr. Sidya.

36. Mr. Sidya is a private figure for purposes of this defamation action and therefore need not prove that Mr. Kmache made the Post with actual malice: knowing that it was false or with reckless disregard of its truth.

37. Mr. Kmache made the Post with fault amounting to at least negligence. He conducted no investigation into his accusations. He did not contact Mr. Sidya to confirm his accusations. He did not confer with credible sources.

38. In this instance, however, Mr. Kmache had actual knowledge, and should have known, that the accusations in his Post were false. In any event, Mr. Kmache published the Post with reckless disregard of its truth.

39. Mr. Kmache made his Post with common law malice manifesting in ill will and spite. Mr. Kmache made his post for the purpose of denigrating Mr. Sidya.

40. Mr. Sidya has suffered significant reputational harm and other damages as a result

of Defendant's Post. Mr. Sidya will continue to suffer perpetual reputational harm because of the Post because it will be on the internet forever.

41. Mr. Sidya has suffered economic damages, reputational injury, and emotional distress, among other things to be proven at trial.

## Count 2 – Intentional Infliction of Emotional Distress

42. The preceding paragraphs are hereby incorporated by reference as if fully realleged in this paragraph.

43. Mr. Kmache, through his Post, intentionally and recklessly inflicted severe emotional distress upon Mr. Sidya, falsely accusing him of being the subject of a police raid.

44. Knowing the dramatic damage his conduct would cause to Mr. Sidya, Mr. Kmache was certain or substantially certain that such severe emotional distress would result from his conduct.

45. Mr. Kmache's conduct was extreme and outrageous as to exceed all possible bounds of decency. Mr. Kmache's conduct must be regarded as atrocious and utterly intolerable in a civilized community.

46. Mr. Kmache's conduct caused Mr. Sidya to suffer severe emotional distress and mental anguish.

47. The emotional distress suffered by Mr. Sidya is and was so severe that no reasonable person could be expected to endure it.

**WHEREFORE,** Mr. Sidya respectfully prays as follows:

(a) That judgment be entered against Mr. Kmache for substantial compensatory damages in an amount exceeding $75,000.00, to be proven at trial;

(b) That Mr. Kmache be held liable for the emotional distress and mental anguish Mr. Sidya has and will suffer;

(c) That judgment be entered against Mr. Kmache for punitive damages in an amount to be determined at trial;

(d) That Mr. Sidya recover pre- and post-judgment interest;

(e) For a trial by jury on all issues so triable;

(f) That all costs of this action be taxed to Mr. Kmache;

(g) That the Court grant all such other and further relief that the Court deems just and proper, including equitable relief.

Respectfully submitted,

/s/ Todd V. McMurtry
Todd V. McMurtry (KBA # 82101)
HEMMER WESSELS MCMURTRY, PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com

*Trial Attorney for Plaintiff,
Yacoub Ould Sidya*

**DEMAND FOR JURY TRIAL**

Plaintiff Yacoub Ould Sidya, by and through undersigned counsel, hereby demands trial by jury on all issues so triable.

/s/ Todd V. McMurtry
Todd V. McMurtry (KBA # 82101)